## ANCHOR OIL COMPANY *v.* GRAY ET AL.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 188. Argued January 27, 1921.—Decided June 1, 1921.

1. The authority of the Secretary of the Interior under § 2 of the Act of May 27, 1908, c. 199, 35 Stat. 312, to approve an oil and gas lease made by a full-blood Creek allottee is not taken away, under § 9, by the death of the allottee. P. 522.
2. As respects the rights of the allottee's heirs and those claiming under them with notice of such outstanding lease, the approval relates back and takes effect as of the execution of the lease by the parties named therein. P. 522.
3. Under the Act of March 1, 1907, c. 2285, 34 Stat. 1026, the lodging of such lease in the office of the United States Indian Agent (now Superintendent of the Five Civilized Tribes) at Muskogee, for transmission to the Secretary of the Interior, constituted constructive notice to persons who, after the death of the lessor and after the lease had been approved by the Secretary, took another lease from the lessor's heirs. P. 522.
4. The provision of the Act of March 1, 1907, making the filing of Indian leases with the Indian Agent at Muskogee constructive

notice, was not superseded by the admission of Oklahoma as a State
or as a result of provisions in the Enabling Act of June 16, 1906, and
in the state constitution adopted thereunder.  P. 523.
257 Fed. Rep. 277, affirmed.

THE case is stated in the opinion.

*Mr. John Devereux,* for appellant, submitted.

*Mr. Preston C. West,* with whom *Mr. A. A. Davidson*
was on the brief, for appellees.

*Mr. Geo. S. Ramsey, Mr. Malcolm E. Rosser, Mr. Villard
Martin, Mr. James A. Veasey, Mr. John M. Chick, Mr. G.
Earl Shaffer, Mr. James C. Denton* and *Mr. Edgar A.
deMeules,* by leave of court, filed a brief as *amici curiæ.*

MR. JUSTICE PITNEY delivered the opinion of the court.

This is a suit in equity instituted by appellant against
appellees in a state court of Oklahoma, involving the
ownership of a leasehold estate for oil and gas mining pur-
poses in a Creek Indian allotment containing 80 acres,
situate in Tulsa County, Oklahoma.  Upon petition of
appellees it was removed to the United States District
Court upon the ground that it arose under the Constitu-
tion and laws of the United States; a motion to dismiss
the suit was granted by that court, the decree of dismissal
was affirmed by the Circuit Court of Appeals for the
Eighth Circuit (257 Fed. Rep. 277), and an appeal brings
the case here.

From appellant's amended petition it appears that the
80 acres were allotted to Jennie Samuels, a full-blood
Creek Indian, as her distributive share of the lands of
the tribe, and patented to her in the year 1903.  Decem-
ber 5, 1914, pursuant to the Act of Congress of May 27,
1908, c. 199, § 2, 35 Stat. 312, and the rules and regu-

lations of the Secretary of the Interior, she made an oil and gas mining lease to McDonnell and Egan covering the lands in controversy, and this was filed in the office of the United States Indian Agent (now, designated as Superintendent of the Five Civilized Tribes), Union Agency, at Muskogee, on January 5, 1915. It was forwarded by the Agent to the Commissioner of Indian Affairs with a favorable recommendation October 14, 1915; submitted by the Commissioner to the Secretary of the Interior for approval, and by him approved October 21, 1915. It was first filed for record in the county clerk's office of Tulsa County on August 10, 1916. Appellees are the owners of this lease, and are in possession of the lands.

Jennie Samuels died intestate October 11, 1915 (ten days before the Secretary's approval of the above lease), leaving as her heirs a daughter, Feney Rogers, and a granddaughter, Lina White, both full-blood Creek Indians, and to them the lands descended, subject to the lease. In the following December they made oil and gas leases to one Williams covering the same 80 acres, which were approved by the county court having jurisdiction of the estate of Jennie Samuels, and were recorded in the county records prior to August 10, 1916. These leases are held by appellant, whose interest was acquired, according to the averments of the petition, without knowledge or notice of the lease made by Jennie Samuels.

Appellees, having entered into possession, commenced drilling and discovered and produced petroleum and natural gas in paying quantities. This suit was commenced in January, 1917, appellant praying that their lease be canceled and they enjoined from interfering with appellant in the possession of the premises, and required to account.

Like the courts below, we find it unnecessary to consider the inherent validity or invalidity of appellant's

title, because we conclude that that of appellees is good and has priority over it. The authority of the Secretary of the Interior to approve and thereby confirm oil and gas mining leases made by full-blood Creek allottees upon their allotments—derived from § 2 of the Act of May 27, 1908—did not cease at the death of the allottee by reason of the provision of § 9 of the same act (35 Stat. 315), "That, the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: *Provided*, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee." The validity of the lease made by Jennie Samuels having been conditioned upon the approval of the Secretary, such approval might be given at any time either before or after her death, so far as the rights of her heirs, and those claiming under them with notice were concerned, and the approval when given related back and took effect as of the execution of the lease by the parties named therein (*Pickering* v. *Lomax*, 145 U. S. 310, 314, 316; *Lomax* v. *Pickering*, 173 U. S. 26, 27, 32; *Lykins* v. *McGrath*, 184 U. S. 169, 171–172).

The lease received the approval which gave it complete validity, some time before the first of the leases made by the heirs to Williams. And Williams was charged with notice of the prior grant, because, under the provision of the Act of March 1, 1907, c. 2285, 34 Stat. 1015, 1026, "The filing heretofore or hereafter on any lease in the office of the United States Indian agent, Union Agency, Muskogee, Indian Territory, shall be deemed constructive notice," the lodging of the prior lease with that officer in January, 1915, for transmission to the Secretary of the Interior, constituted notice to all parties thereafter claiming under her or her heirs. We agree that this provision was neither repealed nor superseded by the admis-

sion of the State of Oklahoma into the Union, or by the provisions of the Enabling Act, or the constitution of the State which became effective November 16, 1907. As the Circuit Court of Appeals pointed out (257 Fed. Rep. 282), § 1 of the Enabling Act (June 16, 1906, c. 3335, 34 Stat. 267), contained a proviso "that nothing contained in the said constitution shall be construed to limit or impair the rights of person or property pertaining to the Indians . . . or to limit or affect the authority of the Government of the United States to make any law or regulation respecting such Indians, their lands, property, or other rights by treaties, agreement, law, or otherwise, which it would have been competent to make if this Act had never been passed." While § 21 of the make act (34 Stat. 277), and § 2 of the Schedule to the constitution of Oklahoma (Rev. Laws Oklahoma, 1910, p. cxcix), contained provisions to the effect that laws in force in the Territory of Oklahoma at the time of the admission of the State not repugnant to its constitution and not locally inapplicable should be extended to and remain in force throughout the State, there was nothing to show an intent to repeal or supersede the provision of the Act of Congress of March 1, 1907, above quoted, or to establish the local recordation statutes in its place so far as related to Indian leases, such as we have here. See *Ex parte Webb*, 225 U. S. 663, 682–683.

The satisfactory reasoning of the courts below, which we have followed in outline, has the support of a well-considered decision by the Supreme Court of Oklahoma in *Scioto Oil Co.* v. *O'Hern*, 169 Pac. Rep. 483.

Appellant lays some stress upon particular provisions in the Jennie Samuels lease, but we find nothing in them to affect the result. They are sufficiently dealt with in the opinion of the Circuit Court of Appeals (257 Fed. Rep. 280–281).

*Decree affirmed.*